UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 06-36-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| HAROLD EDWARD HALL, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court for consideration of Defendant Harold Edward Hall's Motion to Suppress. [Record No. 12] Having reviewed this motion and relevant authorities, the Court concludes that the motion should be denied because the officers had probable cause to arrest and search the Defendant on the date in question. Likewise, the Court concludes that the officers obtained consent to search Hall's vehicle incident to his arrest.

**ANALYSIS**

Hall was arrested on October 11, 2005, after a member of the Laurel County sheriff's department observed the defendant pass what was believed to be controlled substances to a confidential informant. This transaction occurred as part of a controlled buy the officers had set up just minutes earlier. Officers searched Hall incident to his arrest and discovered a quantity of what was believed to be drugs and the money used in the drug buy. Following Hall's arrest, the officers obtained verbal permission to search the Defendant and his vehicle. During this search, the officers discovered a firearm, a notebook, and a large amount of cash located in a

-1-

briefcase in the trunk of the vehicle. Hall has moved to suppress this evidence, arguing that the officers did not have probable cause to arrest him, and that any evidence obtained thereafter should be excluded.

This case ultimately rests on the determination of whether the officers had probable cause to arrest Hall at Love's Truck Stop. If that arrest was proper, then the search incident to arrest would not constitute improper activity by the officers. *Chimel v. California*, 395 U.S. 752 (1969). Similarly, there would be no issues regarding the police officers obtaining of consent to search the trunk of the vehicle, the search of which turned up a briefcase containing a ".38 Special" handgun and over $11,000 in cash. *See e.g. Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

If, however, the initial arrest was unlawful, all of the evidence which flowed from it would likely be excluded. *Terry v. Ohio*, 392 U.S. 1 (1968). Similarly, the evidence discovered as a result of the consent search of the vehicle's trunk might be excluded if the Court considered it involuntary, given the totality of the circumstances. *Bustamonte*, 412 U.S. 218; *but see United States v. Watson*, 423 U.S. 411 (1976).

As the parties acknowledge, the Court must examine the totality of the circumstances to determine if there was probable cause to arrest the Defendant based on the information the officers possessed at the time of the arrest. *Illinois v. Gates*, 462 U.S. 213 (1983). Although the Supreme Court no longer requires the two-prong test of *Aguilar v. Texas*, 378 U.S. 108 (1964), in *Gates* the Supreme Court stated that "veracity, reliability, and basis of knowledge" are still relevant factors which could direct the Court's totality of the circumstances inquiry. *Gates*, 462.

U.S. at 233. Ultimately, however, "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. The Court went on to state that one of the reasons to abandon the two-prong test in favor of the totality of the circumstances test was to allow that a "deficiency in one [prong] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233; *citing Adams v. Williams*, 407 U.S. 143 (1972); *United States v. Harris*, 403 U.S. 573 (1971).

The Sixth Circuit has interpreted *Gates* and the totality of the circumstances test to require the Court to "make a practical, common sense decision . . . given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002) (internal citations omitted). While the Court should consider "veracity, reliability, and basis of knowledge [as] highly relevant in determining the value of an informant's report, these elements are not separate and independent requirements that are to be inflexibly exacted in every case." *Id.*

In *Miller*, the informant observed the defendant growing marijuana in his home while he, the informant, was doing electrical and plumbing work in the defendant's residence. And although the informant had never before provided information to the police, the Sixth Circuit found that the information he gave police provided a "substantial basis to conclude that a search would uncover evidence of wrongdoing." *Miller*, 314 F.3d at 269. The informant had a clear and demonstrable basis of knowledge, the police had several opportunities to speak with the

informant in person, and the informant was subject to prosecution if his information was fabricated. These factors provided probable cause to support the issuance of a warrant.

In the present case, Deputy Blair admitted that police had never worked with this confidential informant before and, therefore, had no history by which to judge her reliability. Conversely, defense counsel did not elicit any testimony that the informant was anything other than an honest, law-abiding citizen, such that police had a reason to doubt her information. Moreover, the informant is the daughter of the Defendant and is presumed to have a great deal of personal information about him and his activities. She came to see the police on her own accord and, therefore, would be subject to prosecution if her information was false. Had she provided nothing more, this *might* have been sufficient to constitute probable cause for the issuance of a warrant.

The officers in question were aware that Hall had been convicted previously for bank robbery. However, there is some question if the officers were aware of the Defendant's past drug-related conviction. (Therefore, for purposes of the present motion, the Court will assume that they did not have this knowledge.) However, having received information from the informant, the police set up and recorded a telephone conversation between the informant and the Defendant. Consistent with information she had provided earlier about the use of "code" language to be used during telephone conversations, the informant told Mr. Hall that she wished to purchase 50 "t-shirts"[1] and a price of $300 was mentioned. During the call, she arranged to

---

[1] The informant had told the police prior to the phone call that she could not mention the term "pills" over the phone. Instead, she used the code word of "t-shirts" which the Defendant would understand to mean pain pills.

meet the Defendant at Love's Truck Stop in southern Laurel County. The officers wired her car to record the transaction and agreed upon a signal to be given if the transaction occurred (i.e., the informant was to back out of her parking place before the Defendant). The informant went to the parking lot, where Hall got into her car. One of the officers then saw a bag being passed from Hall to the informant. After approximately 20 minutes, the informant gave the signal by backing out of the lot and proceeding to a nearby area. After Hall returned to his vehicle, the police position their cars so as to block him in his space. They then arrested him.

Following the arrest, the police verbally advised Hall of his Miranda rights, then performed a search incident to the arrest. Deputy Blair testified that he uncovered three (3) one hundred dollar bills in Mr. Hall's pocket, the same denomination he had given the informant to make the drug purchase. He also uncovered an unmarked pill bottle which his experience led him to believe were Hydrocodone, a pain medication. The police then obtained verbal consent to search the trunk of Hall's car, uncovering a briefcase which the Defendant stated belonged to him. Upon opening the briefcase the officers discovered a .38 caliber handgun and over $11,000 in cash.

Based on the totality of the circumstances, and controlled by the relevant Sixth Circuit authorities, the Court concludes that the information provided by Hall's daughter, the subsequent telephone call with the Defendant, and the officers' observations of the informant and Hall constitute probable cause for his arrest and search. *See e.g. Miller*, 314 F.3d 265; *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc); *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986).

**CONCLUSION**

For the reasons discussed herein, it is **ORDERED** that the Defendant's motion to suppress is **DENIED**.

This 26th day of June, 2006.

Signed By:
*Danny C. Reeves* DCR
United States District Judge